# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORELEI M. LANTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-140-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Lorelei M. Lanten requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U. S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 3, 1954, and was fifty-four years old at the time of the administrative hearing. (Tr. 44). She earned her GED and completed one year of college (Tr. 44, 162), and has worked as housekeeper/cleaner and a janitor (Tr. 80-81). The claimant alleges inability to work since June 2, 2003, due to a hernia, mental problems, hepatitis C, diabetes, arthritis, and heart trouble. (Tr. 155).

## Procedural History

On June 12, 2007, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 139-141). Her application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 10, 2009. (Tr. 21-34). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), but that due to psychologically-based factors she could understand and perform simple and complex tasks; she could interact appropriately with others at a superficial level for work purposes, but could not relate to the general public; and she could adjust to work situations. (Tr. 27). The ALJ thus concluded that

the claimant was not disabled because she could return to her past relevant work as a housekeeper. (Tr. 33).

## Review

The claimant's sole contention of error is that the ALJ failed to properly assess the medical evidence concerning her mental impairments. Because the ALJ does appear to have ignored probative evidence regarding the claimant's mental impairments, the decision of the Commissioner is therefore reversed.

The medical evidence reveals that the claimant had the severe impairments of depression NOS, post-traumatic stress disorder, mixed personality disorder with avoidant and paranoid features, history of polysubstance dependence, mild degenerative disc disease of the thoracic and lumbar spine, and obesity. (Tr. 23). In September 2007, state reviewing physician Dr. Kathleen Gerrity completed a Mental RFC assessment, finding that the claimant was moderately limited in the ability to understand and remember detailed instructions and to carry out detailed instructions, and markedly limited in the ability to interact appropriately with the general public. (Tr. 404-405). Dr. Gerrity further found that the claimant could understand and perform simple and some complex tasks, could interact appropriately with others at a superficial level for work purposes but not with the general public, and that she could adjust to a work situation. (Tr. 406). Consultative examiner Dr. C. Robin McGirk completed a psychological evaluation of the claimant that same month, at which time he diagnosed the claimant with post-traumatic stress disorder (PTSD), depressive disorder, victim of abuse, and the provisional finding of mixed personality disorder with avoidant and paranoid features. (Tr. 398-402). He

noted that stressors included financial problems, social isolation, and lack of medical and psychological treatment, then assigned her a Global Assessment of Functioning (GAF) score of 49 and opined that her prognosis was "guarded given the complexity of physical and psychological symptoms." (Tr. 402).

On November 27, 2007, claimant's treating physician Dr. John Conley completed a Mental Status Form noting her diagnosis of depression, and stating that her depression had improved with medication and that she could remember, comprehend, and carry out instructions in an independent basis, but that it was unknown whether she could respond to work pressure, supervision, and coworkers. (Tr. 423). Records from the Mental Health and Substance Abuse Centers of Southern Oklahoma include counselor Tammie Wavada's January 2008 treatment plan for the claimant and her completion of a Mental Impairment Questionnaire in which she assigned the claimant a GAF of 46 with diagnoses of major depressive disorder recurrent severe without psychotic features and PTSD and a treatment service plan of moderate complexity. (Tr. 748-755). On a February 9, 2009 Mental Impairment Questionnaire, Ms. Wavada assessed the claimant with a GAF of 50 (highest GAF in the past year was 46); checked twelve signs and symptoms including recurrent panic attacks, difficulty of thinking or concentrating, and social withdrawal or isolation; and noted that other symptoms included an increased startled response. (Tr. 753). Ms. Wavada wrote that the claimant "continues to be depressed & has anxiety from the past abuse, which leads to her distrust of people & continued isolation from others. Her traumatic experiences continue to bother her to a significant degree that she has not been able to work." (Tr. 753). As to her functional

limitations, Ms. Wavada found that the claimant had no restrictions of activities of daily living; had marked difficulties in maintaining social functioning; she often had deficiencies of concentration, persistence, or pace; and should would have continual episodes of deterioration if she worked. (Tr. 755).

At the administrative hearing, the claimant testified, *inter alia*, that her depression began when she was a child and was subject to sexual abuse by her mother's boyfriends, that as an adult she had been in a number of abusive relationships, and that she believes those situations have continued to affect her in the present. (Tr. 65-66). Additionally, Ms. Wavada testified telephonically that she had been counseling the claimant in group and individual sessions for about a year, and that with the direction of a licensed psychiatrist and a doctor of osteopathic medicine they had diagnosed the claimant with major depressive disorder recurrent severe without psychotic features and post-traumatic stress disorder. (Tr. 71-72). Ms. Wavada agreed upon questioning from claimant's attorney that the claimant has an affective disorder characterized by a disturbance of mood accompanied by a full or partial manic or depressive syndrome, as well as continuous or intermittent pervasive loss of interest in almost all activities, appetite disturbance with change of weight, sleep disturbance, psycho motor agitation, decreased energy, feelings of guilt or worthlessness, pressure of speech, occasional flight of ideas, easy distractibility, and some paranoia with her PTSD. (Tr. 72-73). Ms. Waveda also stated that the claimant had marked restrictions in her activities of daily living; marked difficulties in maintaining social functioning; marked difficulties maintaining concentration, persistence, or pace; but that she had not seen any episodes of

decompensation nor had she seen a progression. (Tr. 74). She further agreed that the claimant's disease process was such that even a minimal increase in mental demands or a change in environment would lead to decompensation, and that the claimant's disorder was of at least two years duration. (Tr. 74-75). Ms. Waveda stated that she based her opinion of the claimant on the claimant's reports, and that the claimant's reports were also supported by her own observations of the claimant at the clinic. (Tr. 77-78). Ms. Waveda further stated that she had not observed the claimant in her activities of daily living and functioning, but that she had observed the claimant at the clinic and that she struggled with focusing on questions asked. (Tr. 77).

In his written decision, the ALJ summarized the claimant's hearing testimony, and the relevant medical evidence as to her impairments, but made no mention of the numerous GAF scores in the record. As to her mental impairments, the ALJ found both the claimant and Ms. Wavada not credible "to the extent [their statements concerning the intensity, persistence and limiting effects of claimant's symptoms were] inconsistent with the above residual functional capacity." (Tr. 29). The ALJ afforded Ms. Wavada's opinion little weight because her written and hearing functional limitation assessments were not identical, and her opinion appeared to be based on the claimant's own reports because Ms. Wavada did not personally observe the claimant in her activities of daily living. (Tr. 32). As to Dr. McGirk, the ALJ noted his guarded prognosis, but discounted it because other records stated that the claimant's depression was "stable" on medication. (Tr. 32). As to Dr. Conley, the ALJ gave his opinion the most probative weight—along with a treating physician who encouraged the claimant to exercise and find

employment—because he stated that the claimant's prognosis was "improved with medication." (Tr. 32-33). The ALJ then gave the greatest weight to the opinions of the state reviewing psychologists because "there exist a number of other reasons to reach similar conclusions and they are consistent with the treating physicians." (Tr. 33).

All of the claimant's GAF scores from September 2007 through February 2009 were between 46 and 50. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion]. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have considered whether the claimant's substandard GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion]. Instead, the ALJ discredited nearly all of the claimant's mental health evaluations aside from those of the nonexamining state agency physicians.

Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the Court cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Instead, the ALJ should have discussed the evidence supporting his decision and explained his rejection of the evidence that did not. *See, e. g., Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of whether the claimant's substandard GAF scores reflected occupational limitations. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma